UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-02030-RGK (JCx) | Date | July 15, 2011 |
|---|---|---|---|
| Title | **VALOIS v. SKYWEST AIRLINES, et al.** | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** (IN CHAMBERS) Order Re: Defendant SkyWest Airlines' Motion for Summary Judgment (DE 127)

**I.    INTRODUCTION**

On March 13, 2010, Plaintiff Denise Valois ("Plaintiff") filed a Compliant in this Court against Defendants Michael McKelvey ("McKelvey") and Skywest Airlines ("Skywest"). The dispute arises out of alleged sexual harassment perpetrated by McKelvey while he and Valois worked at Skywest. Plaintiff's Complaint brings the following causes of action against McKelvey and SkyWest: 1) sexual harassment under Title VII of the Civil Rights Act of 1964 ("Title VII"); 2) sexual harassment under the California Fair Employment and Housing Act ("FEHA"); and 3) sexual assault and battery. Additionally, the Complaint may be read to charge SkyWest with retaliation under FEHA. Plaintiff prays for compensatory damages, punitive damages, and attorney's fees.

Presently before the Court is SkyWest's Motion for Summary Judgment. As discussed below, the Court **grants in part** SkyWest's Motion. Accordingly, Plaintiff's claims against SkyWest for retaliation under the California Fair Employment and Housing Act ("FEHA"), civil sexual assault and battery, and punitive damages fail. As to Plaintiff's other causes of action, SkyWest's Motion is **denied**.

**II.    FACTUAL BACKGROUND**

The following facts are either uncontroverted, or where controverted, construed in the light most favorable to Plaintiff.

SkyWest is a regional airline carrier operating in the western United States, including California. Plaintiff began working as a flight attendant for SkyWest in June 2004. Shortly after being hired, Plaintiff received a "Sexual Harassment and Disclosure Form" with other paperwork. Plaintiff signed a disclosure attached to the form indicating that she had carefully read and understood Defendant's sexual harassment policies.

In January 2005, Plaintiff met McKelvey, a pilot who also works for SkyWest. During the relevant period, both Plaintiff and McKelvey were based in Santa Barabara, California. McKelvey serves as "pilot in command" on flights for SkyWest. According to company policy, a pilot in command has the following authority over flight attendants:

> The pilot in command (PIC) of an aircraft is directly responsible for and <u>is</u> the final authority as to the operation of the aircraft. The flight attendant will recognize that the PIC has management, control, and responsibility including command authority over all his/her crew, from the time they report for duty, while in the air or on the ground at origin, intermediate cities, or destinations until released from his/her crew by flight operations or at home base. Crewmembers are responsible to the PIC for the following: 1) Conduct throughout flight. 2) Passenger relations aloft. 3) Compliance with all . . . SkyWest Airlines procedures pertaining to safety and comfort of the passengers and crew and to the safety of the aircraft. 4) The <u>flight attendant</u> . . . shall proceed to the flight deck without delay when summoned by the PIC. Such summons shall have absolute priority over all other duties or activities <u>except emergencies such as fire</u> . . . . (Pl. Ex. C) (emphasis in original).

While pilots in command possess broad authority over flight attendants on work assignments, flight attendants and pilots are organized into two departments at SkyWest; each department has an independent management team. A pilot in command does not determine hiring, termination, scheduling, wages, suspensions, or promotions of flight attendants.

The same flight attendants do not always fly with the same pilot in command. Instead, SkyWest operates a bid system to determine the composition of a crew on any given flight. Crew members such as flight attendants determine their monthly schedules by "bidding" on particular flights. Captain and first officer pilots are the first to bid on flights for the month, and then flight attendants bid on flights. Within these groups, seniority determines who bids first. Thus, it may be possible for a flight attendant to avoid working with a particular pilot by bidding for schedules that do not include flights the captain has chosen.

Between April 2005 and May 2008, several instances of sexual contact apparently occurred between Plaintiff and McKelvey. The parties dispute the degree to which Plaintiff consented to these sex acts, and whether McKelvey initiated them. Several of the instances occurred during overnight stays in various cities Plaintiff and McKelvey ended up as a result of flights they had worked.[1] Plaintiff testified that during this period McKelvey was often hostile and disrespectful toward Plaintiff while they were working. For instance, he refused to communicate with Plaintiff at times—even regarding work duties. She claims he became particularly hostile when she had recently resisted his sexual advances or when he suspected she had told other co-workers about their sexual relationship. Plaintiff claims she felt threatened and intimidated by some of his actions. At other times, McKelvey would act in a friendly or solicitous manner towards her. Plaintiff also testified that McKelvey made several unwanted sexually explicit comments to her or about her to others while they were working together. Plaintiff alleges that while privately soliciting her for sex, McKelvey told her co-workers that she was "stalking him." Plaintiff claims that McKelvey's course of conduct made her feel threatened and humiliated. At times, she made efforts to avoid working with him, including cancelling previously scheduled shifts. However, Plaintiff does not contest that she also scheduled shifts to fly with him as well.

Plaintiff's last sexual contact with McKelvey occurred on May 16, 2008 during a work-related overnight stay at a hotel. Plaintiff testified that McKelvey sexually assaulted her in her hotel room over her repeated protests. During the next two days, Plaintiff worked on two flights with McKelvey. She testified that he tried to photograph her breasts without her consent and acted in a hostile manner towards her. This behavior made Plaintiff feel physically ill and emotionally upset.

---

[1] SkyWest provided rooms at hotels of its choosing for such overnight stays. However, the company considered pilots and flight attendants off-duty during these periods, and allowed the employees to make other accommodation arrangements if they wished.

On May 19, 2008, Plaintiff initiated an internal complaint of sexual harassment against McKelvey with SkyWest. Kelly Healey ("Healey"), a human resources manager, was assigned by SkyWest to investigate Plaintiff's complaint.

SkyWest has enacted various policies to prohibit and respond to sexual harassment. The primary policy is Standard Practice 53 ("SP 53"). SP 53, by its terms, prohibits discrimination, including sexual harassment. The policy provides that any employee who believes he or she has witnessed or experienced sexual harassment should report it as soon as possible to the employee's immediate supervisor, any other supervisor, the department's employee relations manager, or an online hotline. The policy further provides that the employee relations department will investigate any complaint promptly and impartially, keeping the complaint confidential. And finally, the policy provides that an employee not satisfied with the outcome or handling of a complaint may bring it to the attention to company's Vice President of human resources.

After receiving Plaintiff's complaint, SkyWest placed McKelvey on temporary administrative leave and Healey began an investigation. Healey initially conducted a brief telephone interview with Plaintiff to get the basics of the complaint. Healey then conducted a telephone interview with McKelvey, in which he denied having any prior sexual contact with Plaintiff, and claimed that she was obsessed with him. McKelvey identified several witnesses who he said would corroborate his story. Healey requested, but never received, telephone and text message records from McKelvey. Healey also spoke with the witnesses McKelvey identified. Eventually, Healey conducted a second interview with Plaintiff, during which Plaintiff relayed her history with McKelvey and the alleged harassment. Plaintiff also showed Healey text message conversations between Plaintiff and McKelvey and claims she identified several witnesses to corroborate her claims. Healey did not interview any other witnesses after speaking to Plaintiff.

The parties dispute the impartiality of SkyWest's investigation. In one email, Healey referred to Plaintiff as a "retard." Also, McKelvey testified that, in her initial conversation with him, Healey characterized Plaintiff as "a little off her rocker," stated that SkyWest was going to conduct a "secret evaluation" on Plaintiff, and told him that she would be "a pit bull" for him, which McKelvey interpreted to mean that she would be on his side in the investigation. McKelvey testified that, in a later conversation, Healey told him that SkyWest was going to put him back to work in the hopes that it would cause Plaintiff to "do nutty things." McKelvey also testified that his boss, Tom MacFarlane, had told him that MacFarlane had "coached" one of the witnesses that Healey was going to talk to. McKelvey claims that on the same call, MacFarlane provided other details about the ongoing investigation.

On August 4, 2008, SkyWest released a memo detailing the conclusions of its investigation. SkyWest determined that there had been a consensual sexual relationship between Plaintiff and McKelvey, and that neither party had perpetrated any harassment. The memo stated that both parties would be returned to regular duties. Both McKelvey and Plaintiff, however, were instructed to take precautions to avoid working shifts with each other or interacting in the workplace. Given the nature of the schedule bidding system described above, Plaintiff bears primary responsibility to keep the two from working the same flights by not bidding on flights he has chosen. Since the memo was released, Plaintiff and McKelvey have not worked any shifts together. Plaintiff does not allege that she encountered any further harassment from McKelvey. At the time of this lawsuit, Plaintiff continues to work as a flight attendant for SkyWest. She has not alleged that she has been demoted or otherwise disciplined following her internal complaint.

## III.     LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Upon such showing, the court may grant summary judgment "on all or part of the claim." Fed. R. Civ. P. 56(a)-(b).

To prevail on a summary judgment motion, the moving party must show that there are no triable issues of material fact as to matters upon which it has the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). On issues where the moving party does not have the burden of proof at trial, the moving party is required only to show that there is an absence of evidence to support the non-moving party's case. *See id.* at 326.

To defeat a summary judgment motion, the non-moving party may not merely rely on its pleadings or on conclusory statements. Fed. R. Civ. P. 56(e). Nor may the non-moving party merely attack or discredit the moving party's evidence. *Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983). The non-moving party must affirmatively present specific admissible evidence sufficient to create a genuine issue of material fact for trial. *See Celotex Corp.*, 477 U.S. at 324.

## IV.    DISCUSSION

In its Motion, SkyWest argues for summary judgment on Plaintiff's claims on the following bases: a) SkyWest cannot be liable under Title VII or FEHA because the alleged harassment took place away from the workplace; b) McKelvey was not Plaintiff's supervisor, so the company cannot be held vicariously liable for his misconduct under Title VII; c) if McKelvey were Plaintiff's supervisor, SkyWest could avoid strict liability under FEHA according to the avoidable consequences doctrine; d) if McKelvey were Plaintiff's supervisor, SkyWest could avoid vicarious liability under Title VII under the *Ellerth/Faragher* defense; e) Plaintiff cannot advance a claim for retaliation under FEHA; f) the California Worker's Compensation Act prevents Plaintiff from bringing a civil claim for sexual assault or battery; g) Plaintiff cannot obtain punitive damages against SkyWest for McKelvey's misconduct.

### A.    **Plaintiff Has Raised a Fact Issue That the Alleged Harassment Is Sufficiently Connected to the Workplace**

Title VII governs employment discrimination. Accordingly, sexual harassment is actionable under the statute only if it affects the plaintiff's "conditions of employment." *Doe v. Oberweis Dairy*, 456 F.3d 704, 715 (7th Cir. 2006); *see also Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61 (2006); *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 65–66 (1986). "The sexual act[s] need not be committed in the workplace, however, to have consequences there." *Doe*, 456 F.3d at 715. However, it is required under federal law that the harassment at least occur as part of a relationship that originated and developed in the workplace to be actionable. *Id* at 716.

Similarly, a claim for harassment under FEHA may only be maintained where it is "in some fashion work-related." *Capitol City Foods, Inc. v. Superior Court*, 5 Cal. App. 4th 1042, 1948 (1992). This requirement does not imply that the harassing conduct must take place in the workplace to be actionable. *Id.*

Here, SkyWest contends that the sexual assault forming the basis of Valois' complaint occurred off-duty and thus did not have a sufficient connection to the workplace to form a sexual harassment claim. The court disagrees. While Plaintiff's claims of the May 2008 sexual assault and sexual coercion on other occasions are the most serious claims against McKelvey, she has also presented evidence of his hostile behavior, sexually inappropriate comments and sexual propositions directed at her while on duty. Even if this behavior itself were insufficient to ground a harassment claim, a triable issue has been presented that McKelvey's off-duty sexual assaults and coercion created consequences that affected Plaintiff's conditions of employment. Neither Title VII nor FEHA require that sexual assault by a co-worker occur in the workplace to be relevant to a sexual harassment claim. The Court finds that Plaintiff has raised an issue of triable fact that the alleged harassment was sufficiently tied to the workplace to sustain sexual harassment claims under FEHA and Title VII.

### B.    **Plaintiff Has Raised a Fact Issue That McKelvey Possessed Supervisory Authority**

Under Title VII, a sexual harassment case against the plaintiff's employer may proceed under one of two theories: vicarious liability or negligence. *Swinton v. Potomac Corp.*, 270 F.3d 794, 803 (9th Cir. 2001). The applicable theory is determined by the relationship between the plaintiff and the alleged harasser; where the harasser is a supervisor of the employee, the employer may be held vicariously

liable for the harasser's actions. *Id.* In contrast, where the harasser and plaintiff are co-workers, plaintiff must show that the employer was negligent in its response to the harassment. *Id.*

A similar distinction is recognized by FEHA. An employer may be held strictly liable for the actions of a supervisor, but negligence must be proven for a plaintiff to recover from the employer for a co-worker's harassment. *See State Dep't of Health Servs. v. Superior Court*, 31 Cal. 4th 1026, 1040–41 (2003).

### 1. Supervisory Authority under Title VII

In *Burlington Industries v. Ellerth*, 524 U.S. 742, 745 (1998), and *Faragher v. Boca Raton*, 524 U.S. 775, 807 (1998), the Supreme Court held that "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile work environment created by a supervisor with immediate (or successively higher) authority over the employee." In the wake of these decisions, courts have taken divergent views on what constitutes supervisory authority.

The Fourth, Seventh, and Eighth Circuits have taken the narrower of the views. For example, according to the Eighth Circuit, an alleged harasser possesses supervisory authority only where he or she may take "tangible employment action" against an employee, such as the authority to "hire, fire, promote, or reassign to significantly different duties." *Joens v. John Morrell & Co.*, 354 F.3d 938, 940 (8th Cir. 2004). Likewise, the Fourth Circuit has reasoned that supervisory authority requires more than the "occasional authority to direct" an employee's work duties, but rather, the "power to take tangible employment actions" against him or her. *Mikels v. City of Durham,* 183 F.3d 323, 334 (4th Cir. 1999).

The Second Circuit, in contrast, has taken a broader view of supervisory authority. In *Mack v. Otis Elevator Co.*, the court explicitly rejected the view that power to take tangible employment action against an employee was a necessary component of supervisory authority. 326 F.3d 116, 126 (2d Cir. 2003). Rather, the court interpreted *Ellerth* and *Faragher* as holding that supervisory authority turned on "whether the authority given by the employer to the [alleged harasser] enabled or materially augmented the ability of the latter to create a hostile work environment for his or her subordinates." *Id.* The court went on to conclude the alleged harasser had supervisory authority based on his authority to direct the plaintiff's day to day work activities. *Id.* at 126–27.

While the Ninth Circuit has not squarely addressed this inter-circuit tension, there is some indication that the broader view prevails here. Cases decided after the aforementioned opinions interpreted the *Faragher/Ellerth* standard as "'not dependent on job titles or formal structures in the workplace, but rather upon whether a supervisor has the authority to demand obedience from an employee.' [i]f [the alleged harasser] engaged in supervision of or had authority over [plaintiff], he could be deemed by a trier of fact as [plaintiff's] supervisor even if the company did not define his role this way." *Dawson v. Entek Intern.*, 630 F.3d 928, 940 (9th Cir. 2011) (quoting *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1119 n.13 (9th Cir. 2004)) (citation omitted). The interpretation appears to encompass directive authority, rather than just the authority to impose tangible employment decisions. In absence of a clearer indication of which view prevails in this circuit, this Court shall follow *Mack*'s finding that power to take tangible employment action against an employee is not required to show that an individual possesses supervisory authority over the employee.

Here, Plaintiff has presented evidence sufficient to raise an issue of triable fact that McKelvey possessed supervisory authority over her. SkyWest's stated policy confirms that during flight flights together, McKelvey not only had "final authority" over Plaintiff but she was responsible to him for her in-flight job responsibilities. According to this policy, McKelvey's authority extended beyond those flights, stretching from the time Plaintiff reported for duty, through stops in intermediate cities, until she was released from crew duties. While it is true that the McKelvey had no authority to hire, fire, discipline, or promote flight attendants like Plaintiff, Plaintiff has presented evidence that McKelvey had the authority to direct her work activities when they flew together. This would appear to qualify as supervisory authority as construed by *Mack* and *Dawson*.

SkyWest argues that since McKelvey's authority over Plaintiff was not general, but rather

restricted to flights, he was not her supervisor under Title VII. However, SkyWest's argument is hampered by reliance on the narrower standard of supervisory authority, which the 9th Circuit has not endorsed. SkyWest cites a Fourth Circuit decision finding no supervisory authority in a factual situation almost identical to the instant case. *See Swentek v. USAIR, Inc.*, 830 F.2d 552, 557–58 (1987). However, this case was decided prior to *Faragher* and *Ellerth*, and its reasoning relies on general agency concepts that were qualified in the sexual harassment context by those decisions. In general, SkyWest's argument depends on the fact that McKelvey did not have authority to take tangible employment actions against Plaintiff. As described above, the court applies a broader conception of supervisory authority. The Court finds that Plaintiff has raised an issue of triable fact that McKelvey possessed supervisory authority over her.

### 2. *Supervisory Authority under FEHA*

FEHA defines the term supervisor as "any individual having the authority . . . to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or the responsibility to direct them . . . if, in connection with the foregoing, the exercise of that authority is not of a merely routine or clerical nature, but requires the use of independent judgment." Cal. Gov't Code § 12926(r). Since the statute explicitly includes the responsibility to direct employees as an independent basis to determine supervisory authority, California law does not require such authority to include the power to take tangible employment actions. Further, an employee need not be fully accountable or responsible for a plaintiff's work product to be considered his or her supervisor. *Chapman v. Enos*, 116 Cal. App. 4th 920, 930 (2004). A court must interpret FEHA's supervisor definition broadly so as to protect employees' rights to be free from discrimination. *Id* at 931.

The standard for supervisory authority under California law appears to be at least as broad as the Title VII standard applied above. Thus, Plaintiff has raised an issue of triable fact that McKelvey was Plaintiff's supervisor under FEHA.

### C. **Plaintiff Has Raised a Fact Issue That SkyWest Is Strictly Liable for Harassment under FEHA**

Since triable issues of fact have been raised over whether McKelvey was Plaintiff's supervisor and whether the alleged harassment was work-related, it cannot be determined as a matter of law that SkyWest will not be held strictly liable for McKelvey's alleged harassment under FEHA. SkyWest argues that even if McKelvey is determined to be Plaintiff's supervisor, it nevertheless may use the doctrine of avoidable consequences as an affirmative defense to liability. SkyWest is incorrect. The avoidable consequences doctrine provides that a person injured by the wrong of another will not be compensated for any damages the injured person reasonably should have avoided. *State Dep't of Health Servs. v. Superior Court*, 31 Cal. 4th 1026, 1043 (2003). The doctrine applies to claims brought under FEHA. *Id.* at 1044. An avoidable consequences defense, however, works only to reduce the amount of damages recoverable by the plaintiff. It is not a defense to liability. Even if it is determined that the defense applies, a plaintiff will lose only the ability to recover damages for additional harassment that occurred after it was unreasonable for him or her to refrain from reporting some initial harassment. SkyWest's own argument eludes to the fact that the doctrine could not provide it with a complete defense, as it alleges that Plaintiff could have avoided "at least some" of the harassment she suffered if she had made a report with in a reasonable time. The question of when and if Plaintiff's actions were unreasonable, and how much her recovery should correspondingly be reduced will be reserved for the trier of fact.

As discussed above, Plaintiff has created an issue of triable fact that SkyWest will be held strictly liable for McKelvey's harassment, the doctrine of avoidable consequences cannot be applied to disturb that result. Accordingly, the Court **denies** SkyWest's request for summary judgment against Plaintiff's claim for harassment under FEHA.

**D.    Plaintiff Has Raised a Fact Issue That SkyWest Is Vicariously Liable for Harassment under Title VII**

Under Title VII, an employer is subject to vicarious liability to an employee for harassment by a supervisor of the employee. *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807. However, an employer may raise an affirmative defense to such liability under the *Ellerth/Faragher* doctrine when the harassment has not culminated in a "tangible employment action" against the employee. *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807. A tangible employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761. Reassignment to more inconvenient job duties, however, does not rise to the level of a tangible employment action. *Ellerth*, 524 U.S. at 761 (citing *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994)).

If no tangible employment action occurred, an employer may avoid vicarious liability under the *Ellerth/Faragher* defense. To do so, the employer must first demonstrate that the plaintiff unreasonably failed to take action to avoid harm from harassment, either by taking advantage of preventative or corrective opportunities offered by the employer or otherwise. *Ellerth*, 524 U.S. at 765; *Faragher* 524 U.S. at 807–08. Where this is the case, the employer may assert the defense if it also establishes that it exercised reasonable care to prevent and promptly correct any sexual harassment. *Ellerth*, 524 U.S. at 765; *Faragher* 524 U.S. at 807–08. As an affirmative defense, the burden rests on the employer to prove both elements by a preponderance of the evidence. *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807.

Under the second prong above, the employer's efforts are examined to determine whether its actions, taken as a whole, established a reasonable mechanism to prevent and correct harassment. *Holly D. v. Cal. Inst. Tech.*, 339 F.3d 1158, 1177 (9th Cir. 2003). Evidence of an employer's anti-harassment policy and related complaint procedure is relevant to show reasonable care under this prong. *Ellerth*, 524 U.S. at 765. However, a formal anti-harassment policy will not establish reasonable care to the extent that the employer fails to implement it effectively. *See Cadena v. Pacesetter Corp*, 224 F.3d 1203, 1208 (10th Cir. 2000). Upon receiving an employee complaint, an employer exercising reasonable care will conduct a prompt and reasonable investigation, and take remedial action as reasonable in light of the results of that investigation. *Holly D.*, 339 F.3d at 1178.

In the first place, the Court finds that Plaintiff has provided no evidence that her harassment culminated in a tangible employment action. Plaintiff has not alleged that McKelvey caused her to be terminated, demoted, disciplined, or otherwise materially negatively affected. While she has been instructed by SkyWest to set her schedule to avoid working with McKelvey, there is no indication that this effected a significant change her employment status. Since Plaintiff has not suffered a tangible employment action, the *Faragher/Ellerth* defense may be available to SkyWest.

SkyWest argues that Plaintiff unreasonably failed to avail herself of corrective opportunities provided by the company by not promptly reporting McKelvey's harassment. Plaintiff alleges the harassment began in 2005, but she did not make her internal compliant until May of 2008. However, even if the Court were to find that McKelvey's harassment went on for three years before Plaintiff complained and this delay in complaining was unreasonable, SkyWest cannot establish the *Faragher/Ellerth* defense as a matter of law, as Plaintiff has raised an issue of triable fact that SkyWest did not take reasonable care in correcting the harassment once she reported it.

For an employer to establish reasonable care under the *Faragher/Ellerth* defense it must prove it both acted reasonably in both preventing harassment and correcting any harassment that occurred. Plaintiff offers no evidence contradicting SkyWest's contention that it maintains a robust facial policy prohibiting harassment, which was effectively communicated to employees, supported by a complaint reporting procedure of which Plaintiff was aware. These policies are similar to those that have been accepted by the 9th Circuit in other cases. *See Holly D.*, 339 F.3d 1177.

Plaintiff argues that SkyWest cannot establish the *Faragher/Ellerth* defense because it failed to act reasonably in correcting the harassment she suffered. Plaintiff asserts that SkyWest did not

investigate her claims against McKelvey in good faith. In support, Plaintiff has offered evidence that the investigator was biased against her, referring to her as a "retard" and "a little off her rocker," and suggesting to her alleged harasser that she and the company were on his side with respect to the investigation. There is evidence that she told McKelvey that he would be put back to work in the hopes that it would cause Plaintiff to "do nutty things." Aside from Healey's comments, Plaintiff has presented evidence that Healey may have conducted the investigation in a lopsided manner in several respects: 1) interviewing witnesses identified by McKelvey, but not those identified by Plaintiff; 2) failing to follow up with McKelvey to obtain requested telephone and text message records; and 3) investigating McKelvey's claims that Plaintiff was "stalking" him without informing her of the charges, while failing to take reasonable efforts to keep the investigation of McKelvey's alleged harassment confidential. Aside from evidence produced to show Healey's bias, there is also evidence that McKelvey's supervisor coached a witness in the investigation to help exonerate McKelvey. While much of this evidence relies on a determination of McKelvey's credibility, the Court finds that it is sufficient to create a triable issue of fact that SkyWest's investigation was not conducted in good faith.

The Court further finds that if SkyWest did not conduct its investigation in good faith, a jury could find that it did not act reasonably in correcting harassment and thus has not established the *Faragher/Ellerth* defense. Defendant contends that its response should be deemed reasonable as a matter of law since Plaintiff has not alleged any further harassment occurred after her complaint. It is not contested that SkyWest's investigation found that no harassment had occurred. However, the company instructed the parties to avoid contact with each other, a responsibility which fell almost exclusively on Plaintiff's shoulders, because of the company's scheduling system. Disciplining a harasser is not the focus of a company's duty to take corrective action, protecting employees from further harassment is. However, a jury question can be raised that a company's response to allegations of harassment were unreasonable, even where the plaintiff has not shown that further harassment occurred. *See Yamaguchi v. U S. Dept. of the Air Force*, 109 F.3d 1475, 1483 (9th Cir. 1997) (finding a factual dispute had been raised that employer had been negligent in not disciplining a harassing co-worker despite taking adequate measures to stop harassment of plaintiff). As Plaintiff has raised an issue of triable fact that SkyWest did not act reasonably in correcting harassment, the company cannot establish the *Ellerth/Faragher* defense as a matter of law. Accordingly, the Court **denies** SkyWest's request for summary judgment against Plaintiff's claim for harassment under Title VII.

### E.     Plaintiff Has Failed to State a Claim for Retaliation under FEHA

FEHA includes a provision prohibiting employers or their agents to take action in retaliation against employees for activity protected under the statute. *See* Cal. Gov't Code § 12940(h). To state a cause of action for retaliation, a plaintiff must show that (1) he or she engaged in activity protected under the statute, (2) he or she was subjected to an adverse employment action, and (3) there was a causal link between the protected activity and the employer's action. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005). To be actionable, an adverse employment action must materially affect the terms, conditions, or privileges of the plaintiff's employment. *See id.* at 1050–52.

Here, SkyWest argues Plaintiff has failed to state a prima facie case for retaliation under FEHA.[2] The Court agrees. At the outset, the Court notes that it is unclear whether Plaintiff intended to include a claim for retaliation in her Complaint. The pleading does not include a claim for retaliation in its list of Plaintiff's causes of action, but rather, includes the language "retaliatory actions" within allegations of SkyWest's conduct supporting a claim for harassment under FEHA. In any event, Plaintiff cannot

---

[2] SkyWest also argues that Plaintiff cannot advance a claim for retaliation because she failed to include the factual basis for the claim in her filing with the Equal Employment Opportunity Commission prior to bringing this suit. SkyWest notes that a plaintiff must file an administrative charge setting out the particulars of his or her claim with the California Department of Fair Employment and Housing or the Equal Employment Opportunity Commission before bringing an action under FEHA. *See* Cal. Gov't Code § 12960(b). Plaintiff did so, but failed to include factual allegations to support a charge of retaliation. However, a retaliation claim not included in an agency filing will not be barred so long as it follows from and is reasonably related to the discriminatory actions alleged in the administrative filing. *Clockedile v. N.H. Dep't of Corr.*, 245 F.3d 1, 6 (1st Cir. 2001). Here, the Court concludes that whatever retaliation Plaintiff might have been attempting to allege in her Complaint would be so related.

sustain an action for retaliation under FEHA, as she has failed to allege or provide evidence that SkyWest subjected her to any adverse employment action in response to her report of McKelvey's harassment or commencement of this lawsuit.

The Court finds that Plaintiff has failed to state a prima facie case for retaliation under FEHA, accordingly, SkyWest's request for summary judgment against this claim is **granted**.

### F. Plaintiff's Claim for Sexual Assault and Battery Against SkyWest Is Barred by the California Workers Compensation Act

Plaintiff's Complaint includes a cause of action for sexual assault and battery against both SkyWest and McKelvey. SkyWest argues that Plaintiff cannot recover from the company for the alleged assault and battery, because the California Workers' Compensation Act ("WCA") provides the exclusive remedy. The WCA provides, "subject to certain particular exceptions and conditions, workers' compensation liability, 'in lieu of any other liability whatsoever' will exist 'against an employer for any injury sustained by his or her employees arising out of and in the course of the employment.'" *Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 708 (1994) (quoting Cal. Lab. Code § 3600). Further, "[w]here the conditions of compensation set forth in Section 3600 concur, the right to recover such compensation is . . . the sole and exclusive remedy of the employee . . . against the employer." Cal. Labor Code § 3602(a). The general exclusivity provision of the WCA includes an exception allowing an employee to bring a civil suit against an employer notwithstanding the exclusivity provision "where the employee's injury or death is proximately caused by a willful physical assault of the employer." *Id.* § 3602(b)(1). However, case law has clarified that this exception does not allow an employee to bring a civil action against an employer where the willful physical assault was perpetrated by a co-employee, even if the employer might be vicariously liable. *Fretland v. Cnty. of Humboldt*, 69 Cal. App. 4th 1478, 1489 (1999).

In this case, Plaintiff's sexual assault and battery claim against SkyWest is premised on vicarious liability, because the alleged assailant was another employee. Therefore, following *Fretland*, Plaintiff's claim against SkyWest is disallowed by the WCA exclusivity provisions.

### G. Plaintiff Has Raised a Fact Issue that She Is Entitled to Punitive Damages under Title VII, but not under California Law

SkyWest argues that Plaintiff is not entitled to punitive damages as a matter of law. The Court agrees, finding that Plaintiff cannot recover punitive damages from SkyWest under California Law or Title VII.

#### 1. *Punitive Damages under the California Civil Code*

Entitlement to punitive damages for violations of California civil law is governed by California Civil Code § 3294. The statute requires a plaintiff seeking punitive damages to prove "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). Further, a corporate employer shall only be liable for punitive damages if an officer, director, or managing agent of corporation "acted with conscious disregard for the rights or safety of others, authorized or ratified the wrongful conduct for which damages are awarded, or was personally guilty of oppression, fraud, or malice." *Id.* § 3294(b). Subsequent caselaw has clarified that only where an employee has the authority to guide the corporate policy of his employer will that employee be considered a managing agent for purposes of § 3294. *See Cruz v. Homebase*, 83 Cal. App. 4th 160, 167–68 (2000).

Here, Plaintiff has not raised a triable issue of fact that she is entitled to punitive damages under California Law. Plaintiff's argument for punitive damages rests on her allegations that SkyWest did not investigate her claims of harassment in good faith, and thus ratified McKelvey's misconduct. As discussed above, the Court finds that Plaintiff has produced evidence to create a fact issue that SkyWest did not conduct a good faith investigation. However, Plaintiff has not provided evidence sufficient to create a fact issue that an officer, director, or managing agent of SkyWest was responsible for the alleged "sham" investigation. *See Cruz,* 83 Cal. App. 4th at 167–68 (finding that ratification must

be performed by an officer, director or managing agent to create corporate liability for punitive damages). Plaintiff's evidence that the investigation was conducted in bad faith suggests misconduct on the part of Healey and MacFarlane. Plaintiff has not offered evidence showing that either of these employees were officers, directors, or managing agents of SkyWest. While Plaintiff contends that the company's management intended that no good faith investigation be made, the Court finds that she has failed to produce competent evidence identifying a managing agent of the company directing this misconduct. Thus, the Court **grants** SkyWest's request for summary judgment against Plaintiff's claim for punitive damages under California Law.

### 2. *Punitive Damages under Title VII*

Punitive damages are available under Title VII where a plaintiff demonstrates that the defendant acted "with malice or with reckless indifference to the [plaintiff's] federally protected rights." 42 U.S.C. § 1981a. However, an employer may not be assessed punitive damages under a theory of vicarious liability "for the decisions of managerial agents where these decisions are contrary to the employer's good faith efforts to comply with Title VII." *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 545 (1999). An employer's implementation of an extensive anti-harassment policy may demonstrate a good faith effort to comply with Title VII as a matter of law. *Bryant v. Aiken Regional Medical Centers, Inc.*, 333 F.3d 536, 548–49.

SkyWest argues that its good faith efforts to comply with Title VII preclude an award of punitive damages against it under *Kolstad*. The Court agrees. As discussed above, SkyWest maintains a robust anti-harassment policy, supported by a clear mechanism for receiving and investigating employee complaints. In the face of such efforts, SkyWest cannot be held vicariously liable for punitive damages assessed for Mckelvey's harassment.

The fact that Plaintiff has raised a fact question that her complaint was not investigated in good faith does not disturb this conclusion. Plaintiff's evidence focuses on the behavior of Healey and MacFarlane, but is not sufficient to raise a fact issue that the company had not implemented its anti-harassment protocols in good faith. While Plaintiff repeatedly suggests that the SkyWest intended the investigation not be conducted in good faith, she has failed to produce admissible evidence sufficient to raise a fact issue that the company did not intend to comply with Title VII. That SkyWest's employees may have mishandled one investigation does not suggest that the company has not, as a general matter, demonstrated a good faith effort to comply with Title VII.[3] Since Plaintiff has failed to raise a fact issue that SkyWest did not make good faith efforts to comply with Title VII, the Court **grants** SkyWest's request for summary judgment against Plaintiff's claim for punitive damages under Title VII.

## V. **EVIDENTIARY OBJECTIONS**

To the extent the Court has relied on evidence to which the parties have objected, the Court overrules those objections.

---

[3] Plaintiff has argues that SkyWest also failed to investigate two prior claims of harassment against McKelvey in good faith. However, Plaintiff has not presented evidence that either of these complaints were significantly mishandled.

## VI. CONCLUSION

As discussed above, the Court **grants in part** SkyWest's Motion for Summary Judgment. Plaintiff's claims against SkyWest for retaliation under FEHA, civil sexual assault and battery, and punitive damages fail. As to Plaintiff's other causes of action, SkyWest's Motion is **denied**.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | slw |