Phyllis Kupferstein, Bar No. 105898
Scott O. Luskin, Bar No. 238082
PAYNE & FEARS LLP
Attorneys at Law
801 S. Figueroa Street, Suite 1150
Los Angeles, California 90017
Telephone: (213) 439-9911
Facsimile: (213) 439-9922
pk@paynefears.com
sol@paynefears.com

Patricia Stambelos, Esq., Bar No. 166998
SkyWest Airlines
444 South River Road
St. George, UT 84790
Telephone:  (818) 584-0011
Facsimile:  (805) 277-3598
patricia.stambelos@skywest.com

Attorneys for Defendant
SkyWest Airlines

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Denise Valois,<br><br>            Plaintiff,<br><br>    v.<br><br>SkyWest Airlines, *et al.*,<br><br>            Defendants. | CASE NO. . CV10-02030-RGK (JCx)<br><br>HON. R. GARY KLAUSNER<br><br>**DEFENDANT SKYWEST AIRLINE'S TRIAL BRIEF**<br><br>TRIAL DATE:  OCTOBER 4, 2011<br>TIME:            9:00 A.M.<br>LOCATION:   ROYBAL FEDERAL BLDG.<br>                     255 E. TEMPLE ST.<br>                     LA, CA 90012<br>COURTROOM: 850<br>JUDGE: HON. R. GARY KLAUSNER |

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ...................................................................................... 1

II.  STATEMENT OF FACTS ....................................................................... 1

   Plaintiff Denise Valois' Employment at SkyWest ............................... 1

   Plaintiff's Alleged Relationship with Michael McKelvey ................... 1

   SkyWest Policies Prohibiting Sexual Harassment .............................. 2

   Plaintiff Complained to SkyWest on May 19, 2008 ........................... 3

   SkyWest Conducted a Prompt, Thorough and Good Faith Investigation ........ 3

   McKelvey Was Not Plaintiff's Supervisor ......................................... 5

III.  CLAIMS AND DEFENSES ................................................................... 7

   A.   Plaintiff Will Be Unable to Prove that She Was Harassed ................... 7

   B.   Because McKelvey Was Not Plaintiff's Supervisor, There is No Strict Liability .......... 8

   C.   Plaintiff Cannot Prove Liability for Co-Worker Harassment ................ 9

   D.   SkyWest Can Prove the Faragher/Ellerth Defense ............................. 10

   E.   Plaintiff Failed to Establish A Continuous Violation Of The Alleged Sexual Harassment ...... 10

IV.  EVIDENTIARY ISSUES........................................................................ 11

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

1

### <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3
CASES

4
*Coughlin v. California Dep't Corrections and Rehab.,*
5
  2:08-cv-02772, 2010 U.S. ................................................................ 9

6
*Fisher v. San Pedro Peninsula Hospital,*
  214 Cal. App. 3d 590 (1989) ........................................................ 7
7

8
*Fuller v. City of Oakland,*
  47 F. 3d 1522 (9th. Cir. 1995) ...................................................... 7
9

10
*Mack v. Otis Elevator Co.,*
  326 F.3d 116 (2d. Cir. 2003) ........................................................ 9

11
*Richards v. CH2M Hill, Inc.,*
12
  26 Cal. 4th 798 (2001) ................................................................ 11

13
*Stewart v. Mississippi Transp. Comm'n,*
14
  586 F.3d 321(5th Cir. 2009) ........................................................ 11

15
STATUTES

16
42 U.S.C. § 2000e-5(e)(1) .............................................................. 10

17
Cal. Gov't Code § 12926(r) ............................................................. 8

18
Cal. Gov't Code § 12960 ................................................................. 10

19
OTHER AUTHORITIES

20

21
E.D. Cal. 2010 ............................................................................. 9

22
Fed. R. Evid. 401, 403, 404 ........................................................... 12

23
Fed. R. Evid. 702, 706 .................................................................. 11

24

25

26

27

28

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

## I.   Introduction

Three years after their alleged relationship began, Plaintiff Denise Valois complained to SkyWest that she needed the Company's help "getting out" of an on again, off again relationship with a pilot, defendant Michael McKelvey.  SkyWest promptly and thoroughly investigated and reached a good faith conclusion that there was no harassment.  Nonetheless, SkyWest ensured that Plaintiff would never again fly with Mr. McKelvey.  In the three and a half years since her complaint, Plaintiff remains employed at SkyWest, the two individuals have never flown together again, and there have been no further complaints from her or about him.  Accordingly, SkyWest should prevail at trial.

## II.   Statement of Facts

### Plaintiff Denise Valois' Employment at SkyWest

Plaintiff began her employment at SkyWest in June 2004.  Plaintiff continues to work as a flight attendant at SkyWest, and has not suffered any demotions, decreases in pay, work criticisms, discipline or any other adverse employment action since her complaint to SkyWest in May 2008.  Plaintiff chooses to work part-time for SkyWest but has the seniority to bid to work full-time.

### Plaintiff's Alleged Relationship with Michael McKelvey

According to Plaintiff's statements to SkyWest during the investigation, and the information she has provided in this lawsuit, she met McKelvey in January 2005, and first had sex with him in April 2005, when Plaintiff invited McKelvey to her home.  Plaintiff testified that, afterwards, she was concerned that she had engaged in sexual intercourse with McKelvey because they were not in a relationship, McKelvey was unwilling to talk to her "about it," and because "they worked together."  At that time, she wanted something more than just a sexual relationship, but McKelvey was not interested.  A few months later, in September 2005, Plaintiff and McKelvey agreed to meet for drinks at a bar in Santa Barbara, and they later drove to her house and had sex, which was fully consensual.  Plaintiff

was "hopeful that there would be a relationship if [she] had sex with him again."

Plaintiff claims that she and McKelvey continued to have sex on various occasions, either in her home or her hotel room, including in their off-time on an overnight trip to Ontario in November 2006, when Plaintiff admits that she asked McKelvey to have sex with her. Often, Plaintiff made specific efforts to fly with McKelvey.[1] At other times, when McKelvey was cold towards her or had "stood her up" for dates, she would drop trips[2] due to her disappointment with him. In May 2007, McKelvey yelled that he did not want to hang out with her on overnights, and if she continued to talk to him he would consider it harassment and write her up. This incident is consistent with the accounts by McKelvey and other witnesses that McKelvey tried to avoid Plaintiff and did not want her attentions.

Their last alleged sexual encounter was on May 16, 2008. Plaintiff alleges McKelvey sexually assaulted her in her room. Witnesses will testify, however, that Plaintiff's conduct after this alleged assault was inconsistent with this claim.

**SkyWest Policies Prohibiting Sexual Harassment**

SkyWest has well-established policies, primarily set forth in Standard Practice 53 ("SP 53"), which prohibits "discrimination of any kind including sexual harassment," and provides multiple reporting options, including to a toll-free hotline, or contacting Employee Relations. It provides for prompt, impartial

---

[1] SkyWest's crew members "bid" for schedules each month based on seniority. The system first assigns a captain, then a first officer, and finally the flight attendant(s). Captains cannot request to fly with or avoid flying with any other particular crew member, but flight attendants can set their preferences to include or exclude other specific crew members. If a flight attendant bids not to fly with a particular captain that month, s/he will not be assigned to a trip on which that captain is assigned.

[2] After the schedule is determined, SkyWest permits crew to add, drop or trade trips provided, among other things, they maintain a requisite minimum or maximum number of flight hours. These adds, drops, and trades can occur sometimes up until three hours before the reporting time for a particular trip or flight.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

investigations, confidentiality, and an appeal process "[i]f an employee is not satisfied with the handling of a complaint or the action taken."  Plaintiff signed SkyWest's "Sexual Harassment and Disclosure" form, which states that "I have carefully read and understand all the information in the Sexual Harassment Training Module.  I agree to ABIDE by SkyWest Airlines policy as outlined herein."

**Plaintiff Complained to SkyWest on May 19, 2008**

Plaintiff first complained to SkyWest about McKelvey on May 19, 2008, three years after the alleged relationship began, by contacting Ruth Lawrence, President of the flight attendants' representative group.  The next day, Ms. Lawrence put Plaintiff in contact with Kelly Healey, an Employee Relations Manager.  Ms. Healey was an experienced investigator who had substantial training regarding investigations.

During their first conversation on May 20, Plaintiff provided Ms. Healey the basic details of her relationship with and the alleged assault by McKelvey.  Ms. Healey took notes of the conversation, and drafted a two-page summary.  Plaintiff told Ms. Healey and Ms. Lawrence that the sexual contacts with McKelvey were "welcome" except for the incident on May 16.  Plaintiff thought that Ms. Healey asked poignant questions and made her feel comfortable.  During that interview Plaintiff felt supported by the Company.  After this conversation, SkyWest began investigating the complaint in earnest.  Ms. Healy acted as the chief investigator of the complaint and kept an investigation file of all the facts gathered.

**SkyWest Conducted a Prompt, Thorough and Good Faith Investigation**

After receiving the complaint, SkyWest placed McKelvey on administrative leave, which meant he did not fly or attend work.  Plaintiff was offered this same opportunity but elected to continue working as if nothing had happened.  At the same time, Ms. Healey began her investigation.  She scheduled an in-person interview with Plaintiff which Plaintiff cancelled at least twice, but ultimately occurred on June 26.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

1    In the meantime, and because it was unclear when Plaintiff would make

2    herself available, Ms. Healey moved forward with the investigation.  She contacted

3    McKelvey on May 22, 2008, to obtain his version of events.  He denied any sexual

4    contact with Plaintiff, and sent Ms. Healey a written response to Plaintiff's

5    complaint.  McKelvey identified several witnesses that he believed would state he

6    did not have any relationship with Plaintiff, and Ms. Healey followed up by

7    interviewing them.  Between May 22 and June 26, the Company conducted eight

8    third-party witness interviews.  None of these witnesses provided any evidence of

9    harassment, let alone a sexual relationship between McKelvey and Plaintiff.  Rather,

10   they consistently described McKelvey's efforts to avoid Plaintiff, Plaintiff's efforts

11   to fly with and interact with McKelvey, and Plaintiff's disappointment that

12   McKelvey did not return her affections.

13   After the interviews, Ms. Healey researched the details provided by Plaintiff

14   during her initial interview and McKelvey's response, including information from

15   the hotel where the last incident allegedly occurred to see if McKelvey's story held

16   up.  She also reviewed information about the parties' bidding preferences,

17   specifically to see if Plaintiff bid to fly with McKelvey or if either of them traded or

18   added trips to fly together.  Plaintiff admits that at one point she bid to fly with

19   McKelvey for an entire month.  In addition, Ms. Healey determined that Plaintiff did

20   repeatedly pick up trips to fly with McKelvey and that McKelvey did repeatedly

21   drop trips to avoid Plaintiff.

22   On June 26, 2008, Plaintiff finally met with Ms. Healey in person.  At

23   Plaintiff's request, Ruth Lawrence was also present.  During a lengthy interview,

24   Ms. Healey let Plaintiff tell her side of the story in detail and also asked questions.

25   Ms. Healey took copious notes of the interview, and later typed a summary.  Both

26   Ms. Healey and Ms. Lawrence believed that Plaintiff reported that the sexual contact

27   was consensual and that even if there were times when she initially expressed that

28   she did not want to have sex, she eventually decided to have sex with him, on each

PAYNE & FEARS LLP

ATTORNEYS AT LAW
801 S. FIGUEROA, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

-4-

1  occasion hoping it would lead to a more substantive relationship.

2  After the interviews were completed, Ms. Healey gave McKelvey and

3  Plaintiff each a chance to change or clarify any of the information they presented.

4  Plaintiff provided additional information, including her summary of text messages

5  between her and McKelvey, which Ms. Healey also took into consideration.  At no

6  time did Plaintiff  suggest that Ms. Healey interview any additional witnesses.

7  McKelvey did not change or add anything to his prior statements.

8  After gathering the facts and evidence, Ms. Healey informed Plaintiff and

9  McKelvey that "[b]ased on a thorough investigation and examination of the

10  evidence and facts obtained, our investigation regarding the complaint filed has

11  concluded that a consensual relationship existed and no sexual harassment was

12  perpetrated by either party."  Both parties were also instructed to take precautions to

13  avoid working trips together or interacting in the workplace.  Plaintiff was also

14  instructed to "'bid avoid' Mr. McKelvey, and not volunteer for trips to which he has

15  been assigned, or drop or swap trips that the computer assigns." This was the only

16  way to ensure that she could avoid being scheduling to fly with him Plaintiff was

17  informed that if she inadvertently was scheduled on a trip with McKelvey, SkyWest

18  would ensure she did not have to fly with him and that her pay would not be

19  negatively impacted by any such change.  Plaintiff and McKelvey have not flown

20  together again.  SkyWest has not received any further complaint of harassment by or

21  regarding Plaintiff or McKelvey.

22  **<u>McKelvey Was Not Plaintiff's Supervisor</u>**

23  At SkyWest, there are two departments that oversee flight crews:  Flight

24  Operations, which oversees flight deck crew members (pilots), and InFlight

25  Operations, which has oversight for cabin crew members (flight attendants).  Each

26  department has its own management team and separate chain of command.  Pilots

27  report directly to his/her chief pilot/assistant chief pilot, while flight attendants

28  report directly to his/her chief flight attendant/assistant chief flight attendant.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

All decisions regarding hiring, terminations, scheduling, pay rates, suspensions, evaluations, promotions, and directions for flight attendants' work are made by InFlight Operations.  Plaintiff admits McKelvey had no authority to hire, terminate, transfer, suspend, lay off, promote, reward, or discipline her.  No one in the Flight Operations Department has any decision-making ability over flight attendants.  Other than ensuring safety of flight, pilots are not responsible for directing the flight attendants' work in the cabin of the aircraft or at any other time.

The pilot's command authority over flight attendants and passengers with respect to the safety and operation of the aircraft during a flight, exists only while the crew is on flight status duty.[3]  At the termination of a flight at an intermediate destination or a final destination (including the crews' home base), flight attendants (and passengers) are no longer under the pilot's authority.  During periods of layover between flights, during overnight layovers,  and at the crews' final destination, the crews are off duty and can do as they please.  If the crew is off the aircraft at an intermediate destination, their time is their own until it is time to report back to the aircraft.

SkyWest provides (at no cost) shuttle service and hotel rooms for crews during overnights, but crews (including flight attendants) are not required to use them.  They can take a different shuttle or a taxi service, or stay with friends, family or at another hotel during an overnight trip.  Crew members are not required to spend any of their non-flight duty status time together.  They may eat, drink, sleep, and socialize wherever and with whomever they like.

---

[3] This term "pilot in command" is mandated by the Federal Air Regulations (FARs), and the language of SkyWest's policy on this subject is taken directly from the FARs.  McKelvey's "authority" as the "pilot in command" was and is limited to his responsibility for the safety of the crew and passengers on the aircraft that he is flying at the time he is in control of the aircraft only.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

### III.  Claims and Defenses

The Court granted in part SkyWest's  motion for summary judgment, and dismissed Plaintiff's claims for retaliation, sexual assault, and sexual battery against SkyWest.  Further, the Court determined that Plaintiff was not entitled to punitive damages.  The remaining claims for trial against SkyWest are sexual harassment and failure to prevent harassment.  SkyWest will be able to show at trial that it is not liable for these claims.

### A.    Plaintiff Will Be Unable to Prove that She Was Harassed

Plaintiff's sexual harassment claims require her to prove, *inter alia*, that she was subjected to unwelcome verbal or physical conduct of a sexual nature that was severe or pervasive.  *Fuller v. City of Oakland*, 47 F. 3d 1522, 1527 (9th. Cir. 1995) (Title VII); *Fisher v. San Pedro Peninsula Hospital*, 214 Cal. App. 3d 590, 608 (1989) (FEHA).  She must also prove that her "working environment…[was] both subjectively and objectively …perceived as abusive."  *Fuller*, 57 F. 3d at 1527.

Plaintiff will be unable to prove most of these elements.  First, even if the jury believes there was sexual contact,[4] she readily admits that it was welcome.  Plaintiff told her friends and life coach that she was infatuated with Mr. McKelvey, wanted an emotional relationship with him, and did not claim sexual assault until after he refused to help her clean the airplane on their last flight together.  In fact, SkyWest will present evidence that Ms. Valois does not exhibit any of the characteristics of an assault victim.

Second, without proof  of sexual assault, Plaintiff cannot show that any comments made by Mr. McKelvey rose to the level of severe or pervasive.  As

---

[4] Not only does McKelvey deny sexual contact with Plaintiff, but Plaintiff told her gynecologist on more than one occasion in 2007 that she had been sexually abstinent for 14 years, and although she had recently had close physical contact with someone, there was no penetration.  This evidence is in stark contrast to Plaintiff's claims of multiple instances of vaginal and anal penetration by McKelvey beginning in 2004.

neither Title VII nor FEHA is a civility code, stray remarks should not result in liability.

Finally, a reasonable woman in Plaintiff's circumstances would not find the environment to be hostile or abusive.  The one consistency in Plaintiff's accounts of her alleged relationship with McKelvey is that it was dysfunctional, that she wanted an emotional relationship and that he did not.  Her disappointment that her "crush" would not return her affections is that of a schoolgirl, not a reasonable woman.  To the extent Plaintiff asserts she is an egg-shell plaintiff because of her pre-existing chronic depression and anxiety, she actually undercuts her claims.  She will not be able to submit to the jury that her own impressions were reasonable under the circumstances, and therefore she will not be able to prove harassment.

### B.   Because McKelvey Was Not Plaintiff's Supervisor, There is No Strict Liability

The evidence will show that Mr. McKelvey is not Plaintiff's supervisor.  "A supervisor is an individual having the authority, in the interest of the employer to hire, fire, transfer, suspend, lay off, recall, promote, discharge, assign, reward or discipline other employees, or the responsibility to direct them if, in connection with the foregoing, the exercise of that authority is not of a merely routine or clerical nature, but requires independent judgment."  Cal. Gov't Code § 12926(r).  Plaintiff contends McKelvey was her supervisor because he can allegedly direct her work activities as the "Pilot-in-Command" during flight.

While Plaintiff's claim may have prevented summary judgment, it will not suffice at trial.  An individual "has authority to direct another employee's day-to-day work activities if he has authority to increase the employee's workload or assign undesirable tasks."  EEOC Enforcement Guidance on Vicarious Employer Liability for Unlawful Harassment by Supervisors (located at http://www.eeoc-gove/policy/hocs/harassment.html)  Further, an individual who is temporarily authorized to direct another employee's daily work activities qualifies as his or her

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

-8-

PAYNE & FEARS LLP

ATTORNEYS AT LAW
801 S. FIGUEROA, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

1    supervisor only during that time period. *Coughlin v. California Dep't Corrections*

2    *and Rehab.*, 2:08-cv-02772, 2010 U.S. Dist. LEXI 40868, at *17-18 (E.D. Cal.

3    2010).  Someone who directs only a limited number of tasks or assignments would

4    not qualify as a supervisor, however.  EEOC Guidance, *supra*.  In fact, the authority

5    given by the employer must enable or materially augment the ability of the

6    employee to harass his or her subordinates. *Mack v. Otis Elevator Co.*, 326 F.3d

7    116, 126 (2d. Cir. 2003).

8         Notably, none of the alleged conduct took place while McKelvey was actively

9    flying the plane as the PIC.  Instead, Plaintiff alleges only that isolated improper

10   remarks occurred during work hours and that any sexual contact happened during

11   off-duty hours—after she invited McKelvey to her house or into her hotel room.

12   Moreover, there is no evidence that he was able to direct her work.  Other flight

13   attendants will testify at trial that they are not directed by pilots during flight.  The

14   pilots remain on the flight deck, while the flight attendants control the passenger

15   cabin; the pilots have no way to monitor or direct the flight attendant's duties.  In

16   fact, the PIC's authority only applies to safety of the plane.  They may not direct the

17   workload of the flight attendants or assign undesirable tasks.

18        **C.    Plaintiff Cannot Prove Liability for Co-Worker Harassment**

19        Because McKelvey is merely Plaintiff's coworker, she will have to prove that

20   (1) SkyWest knew or should have known about the harassment; or (2) SkyWest

21   failed to make a reasonable response to her claims.  Ninth Circuit Manual Of Model

22   Civil Jury Instructions (2007); Model Instruction CACI 10.2  Here, the evidence is

23   that SkyWest had neither actual nor constructive knowledge of Plaintiff's claims

24   against McKelvey.  As the Court noted in the summary judgment ruling, SkyWest

25   had a robust sexual harassment policy and reporting mechanism.  Therefore, it can

26   be inferred that if management had known of the alleged harassment, it would have

27   been reported and investigated.

28        When SkyWest was finally alerted by Plaintiff on May 18, 2008, after three

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

1  years of alleged ongoing harassment, it took immediate steps to stop further

2  harassment and investigate Plaintiff's claims.  Because SkyWest did not have any

3  credible information to conclude there was any sexual harassment, it did not

4  discipline McKelvey (or Plaintiff for her participation in inappropriate

5  conversations, or other conduct).  While Plaintiff will likely claim that she has been

6  burdened by the requirement to bid-avoid, there was no other reasonable way to

7  prevent them from flying together.  Most importantly, there have been no further

8  claims of harassment.

9       **D.     SkyWest Can Prove the Faragher/Ellerth Defense**

10      Even if the jury finds that McKelvey was a supervisor, SkyWest will be able

11  to meet its burden to prove the Faragher/Ellerth Defense.  SkyWest can prove that it

12  exercised reasonable care to prevent and promptly correct the alleged sexual

13  harassment by McKelvey against Plaintiff.  Furthermore, it can prove that Plaintiff

14  unreasonably failed to take advantage of any preventive or corrective opportunities

15  provided by SkyWest or otherwise unreasonably failed avoid harm by waiting three

16  years to first complain about McKelvey.  *See* 9th Circuit Manual of Model Jury

17  Instructions 10.2B; CACI 2526.

18      **E.     Plaintiff Failed to Establish A Continuous Violation Of The**

19              **Alleged Sexual Harassment**

20      To maintain a lawsuit for harassment, a plaintiff must first exhaust her

21  administrative remedies by filing a timely charge with a government agency.  Under

22  California law, a charge must be filed with the agency within one year after the date

23  upon which the alleged harassment occurred.  Cal. Gov't Code § 12960.  Under

24  Federal law, a charge must be filed within 300 days. 42 U.S.C. § 2000e-5(e)(1).

25  Here, Valois filed her charge on March 11, 2009.  Therefore, any evidence of

26  harassment before March 11, 2008, should not be considered for purposes of her

27  California claims.  Similarly, any evidence of harassment before May 15, 2008,

28  should not be considered for purposes of her Federal claims.  The only exception to

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

1  the statute of limitations would be if Plaintiff had established a continuing violation,

2  which she failed to do.

3       To establish a continuing violation, a plaintiff has to show that the alleged

4  series of harassing actions were sufficiently similar in kind. *See Richards v. CH2M*

5  *Hill, Inc.*, 26 Cal. 4th 798, 823 (2001). Plaintiff alleges that she was subject to non-

6  consensual sexual contacts starting in 2005 and spanning to May 2008. But she

7  admits that in the interim there were consensual sexual contacts. In fact, Plaintiff

8  actually asked for sex. The consensual sexual contact undisputedly would not

9  support liability for sexual harassment; and thus, is sufficiently different to "sever"

10  any earlier improper conduct from a continuing violation. *See Stewart v. Mississippi*

11  *Transp. Comm'n*, 586 F.3d 321, 329(5th Cir. 2009) (holding that when employee

12  was assigned away from supervisor who had allegedly harassed her, and more than a

13  year later again placed under his control, the two periods of alleged harassment were

14  "severed" by the intervening assignment to a different supervisor.)

15       The last **admitted** consensual sexual contact was on November 19, 2006, so

16  certainly no alleged sexual harassment prior to November 19, 2006, should qualify

17  as part of a continuous violation claim. To the extent that Plaintiff cannot establish

18  any other series of non-consensual acts, SkyWest also should not be liable for any of

19  them outside of the limitations period. If the evidence establishes that there are

20  other consensual acts, they should similarly sever liability for any preceding non-

21  consensual act outside of the limitations period.

22       **IV.  Evidentiary Issues**

23       Other than those briefed in the motions in limine, SkyWest expects the

24  following evidentiary issues to arise at trial.

25       1.    The testimony of Dr. Reading may infringe on the jury's right to make

26  credibility determinations and the Court's duty to instruct the jury on the law. Fed.

27  R. Evid. 702, 706.

28       2.    Plaintiff intends to rely upon the hearsay notes of Mr. McKelvey to

impugn SkyWest's investigation.  These notes are not admissions by SkyWest, and therefore should only be admissible against Mr. McKelvey to the extent relevant with a limiting instruction.  Further, these notes should not be admissible for their truth because they are based on statements of a third party, and are neither reliable nor more probative than prejudicial.  SkyWest will object to their introduction at trial.

3.      Plaintiff intends to introduce SkyWest's response to the EEOC at trial. She claims that SkyWest lied to the EEOC and seeks an evidentiary sanction.  First, Plaintiff has no proof to support these allegations and SkyWest denies them. Second, these types of EEOC statements are not admissible at trial because they are completely irrelevant.  Fed. R. Evid. 401, 403, 404.  SkyWest's response to the EEOC has no bearing on whether Mr. McKelvey harassed Ms. Valois or whether SkyWest reasonably responded to her complaint.

4.      Exhibit 16, plaintiff's chronological notes of various events, should not be admitted for the truth, except to the extent it contains impeaching evidence and admissions against plaintiff's interest.  The document is self-serving hearsay and was not prepared contemporaneously with the events it purportedly describes, but only after plaintiff had retained counsel and at his direction.

DATED: September 28, 2011           PAYNE & FEARS LLP


By:  _____  /s/ Scott O. Luskin
                        Scott O. Luskin

Attorneys for Defendant
SkyWest Airlines

4812-6986-5482.1

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911